UNITED STATES of America, Plaintiff,

v.

STATE OF TEXAS et al., Defendants.

Civ. A. No. 76–H–1681.

United States District Court,
S. D. Texas,
Houston Division.

March 15, 1977.

John P. MacCoon, Dept. of Justice, Washington, D. C., in Charge; James R. Gough, Asst. U. S. Atty., Houston, Tex., Local Counsel, for United States.

David M. Kendall, Jr., First Asst. Atty. Gen., Austin, Tex., for State of Texas and John L. Hill, Atty. Gen.

Mark White, Secretary of State of Texas, Austin, Tex., and Will Sears, Michael T. Powell, Sears & Burns, Houston, Tex., for Waller County, Tex. and Le Roy Symm, Tax Assessor-Collector of Waller County, Tex.

Before INGRAHAM, Senior Circuit Judge, NOEL, Senior District Judge and STERLING, District Judge.

NOEL, Senior District Judge.

## MEMORANDUM OPINION

This action is again before the Court, on cross-motions for summary judgment, the United States' Motion for a Preliminary Injunction, and the Court's consideration *sua sponte* of the question of abstention.[1] In this suit for declaratory and injunctive relief, the United States alleges that discriminatory voter registration procedures and standards are applied by Le Roy Symm, the Tax Assessor-Collector of Waller County, Texas, in his capacity as voting registrar, to students attending Prairie View A & M College in violation of 42 U.S.C. §§ 1971(a) and 1973 as well as the Fourteenth, Fifteenth, and Twenty Sixth Amendments to the Constitution. In particular, the United States alleges that defendant Symm, the voting registrar, selectively uses a self-formulated questionnaire[2]

1. This suit, including a Motion for a Preliminary Injunction, was filed on October 14, 1976. That Motion for a Preliminary Injunction sought temporary relief with respect to the registration of students for the November 2, 1976 general election and was denied as moot by Order entered on October 29, 1976. The Court's memorandum opinion is reported at 422 F.Supp. 917. The Motion for a Preliminary Injunction presently before the Court was filed on February 8, 1977 and seeks temporary relief with respect to local elections to be conducted in Waller County on April 2, 1977.

2. The questionnaire asks the following questions:
Please print or type your name and address.
Are you a college student?
If so, where do you attend school?
How long have you been a student at such school?
Where do you live while in college?
How long have you lived in Texas? In Waller County?
Do you intend to reside in Waller County indefinitely?
How long have you considered yourself to be a bona fide resident of Waller County?
What do you plan to do when you finish your college education?
Do you have a job or position in Waller County?
Own any home or other property in Waller County?
Have an automobile registered in Waller County?
Have a telephone listing in Waller County?

in determining whether students are residents of Waller County for voting purposes, and that Symm is the only registrar in Texas that utilizes such a questionnaire.

## I. BACKGROUND

The use of this very same questionnaire by Symm for purposes of determining voter residency has been the subject of two prior suits. In *Wilson v. Symm*, 341 F.Supp. 8 (S.D.Tex.1972), five black students of Prairie View A & M College brought suit under 42 U.S.C. § 1983, alleging that all students in Waller County, and only students, were required to complete the residency questionnaire in violation of the Fourteenth and Twenty Sixth Amendments. The classification alleged in *Wilson* was between students and non-students in Waller County. A claim of racial discrimination was originally plead, but abandoned in later pleadings. The Court in *Wilson* held that the questionnaire did not constitute a discrimination in violation of the Fourteenth or Twenty Sixth Amendments, but that it was a permissible means of determining residency.

In *Ballas v. Symm*, 494 F.2d 1167 (5th Cir. 1974), *aff'g*, 351 F.Supp. 876 (S.D.Tex.1972), a white student at Prairie View A & M attacked the use of the questionnaire on the theory that Symm was applying a different practice or procedure for determining the residency of students than was applied to non-students in Waller County in violation of the Fourteenth Amendment and 42 U.S.C. § 1971(a)(2)(A).[3] The Fifth Circuit noted that Symm required the questionnaire not only of students, but also of non-student applicants whom he did not know and whose names could not be found on the tax rolls. Thus, the use of the question-

naire was upheld by the Court of Appeals upon the basis of the following determination about the Waller County voter registration procedure:

The practices or procedures utilized in determining the residency of applicants appear to be uniform. It is a three step procedure: (1) if the registrar knows an applicant to be a resident of the county through his personal knowledge, he does not challenge the registration; (2) if he does not know the applicant, the registrar checks the assertion of residency by inspecting the tax rolls; and (3) if the previous two methods do not reveal any indicia of residency, the applicant is requested to complete the questionnaire to unearth other indicia of residency upon which voter qualification can be based. Residence may be established to the satisfaction of the registrar at any of the three steps. The fact that some applicants may establish their residency at an earlier step than other applicants does not mean that different standards, practices, or procedures are being utilized in contravention of 42 U.S.C.A. § 1971(a)(2)(A).

494 F.2d at 1172.

The United States has now mounted the third attack against the use of Symm's questionnaire. It is undisputed that the questionnaire is used in the same fashion and as a part of the same procedure that was upheld by the Fifth Circuit in *Ballas, supra*. The United States seeks to avoid the holdings of *Ballas* and *Wilson* by alleging that the purpose and effect of the use of the questionnaire is to discriminate against Prairie View A & M students, not only as compared with the practice and

Belong to a church, club or some Waller County organization other than college related?
If so, please name them.
Where do you live when the college is not in session?
What address is listed as your home address with the College?
Give any other information which might be helpful?

**3.** 42 U.S.C. § 1971(a)(2)(A) provides that:

(2) No person acting under color of law shall—
(A) in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote;

procedure by which nonstudents in Waller County are registered, but also as compared with the practices and procedures by which students are registered in all the other counties wherein institutions of higher learning are located within the State of Texas. It is asserted that no other county in Texas utilizes a residency questionnaire. The alleged intracounty discrimination raises primarily a Twenty Sixth Amendment question of discrimination against students. On the other hand, the alleged discrimination from the statewide perspective raises primarily a question of racial discrimination by virtue of the fact that Prairie View A & M is a predominantly black school, and the United States contends that the registration of those black students could result in Waller County becoming the only county in the State of Texas with a black voting majority.

The gravamen of the present suit is not the use of the questionnaire *per se*, but the lack of statewide uniformity with respect to the use of such a questionnaire. The Texas Secretary of State and Attorney General were joined as defendants in this suit because it is alleged that they have a duty under state law to maintain uniformity in the application of the Texas election laws and that pursuant to that state mandate they should prohibit the practice of using a residency questionnaire by only one county registrar.[4]

Because it appeared that the United States' complaint raised state law issues that might obviate the need for a federal constitutional adjudication, the Court by Minute Entry of February 17, 1977, requested briefing on the applicability of the *Pullman* abstention doctrine. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Before reaching the question of abstention, however, the Court must first dispose of the motion of defendants Symm and Waller County for summary judgment on their affirmative defense of *res judicata*,[5] which, if meritorious, would bar both the federal and state law claims in this suit.

## II. RES JUDICATA

If *res judicata* were applicable here, then the United States would be absolutely barred from relitigating all grounds for recovery that were available to the parties in *Wilson v. Symm*, 341 F.Supp. 8 (S.D. Tex.1972), and *Ballas v. Symm*, 351 F.Supp. 876 (S.D.Tex.1972), aff'd, 494 F.2d 1167 (5th Cir. 1974), regardless of whether all grounds for recovery were judicially determined. To apply the principle of *res judicata*, the Court must find that (a) there was a final judgment on the merits on the prior litigation, (b) that the parties here are the same or in privity to the parties in *Wilson* and *Ballas*, and (c) that the cause of action is the same. *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927).

Both *Ballas* and *Wilson* resulted in final judgments on the merits, but the second requisite, identity of parties, is not present in this case. Clearly, the named plaintiffs differ, but our inquiry does not end with that determination. The federal courts have repeatedly held that judgments can bind persons not party to the litigation asserted as a bar if they are in privity to the parties to such litigation. The Fifth Circuit defines privity as a relationship "sufficiently close" to justify preclusion, citing three examples: (a) a non-party who has succeeded to a party's interest in property, (b) a non-party who controlled the original suit and (c) a non-party whose interests were represented adequately by a party in the original suit. *Southwest Air-*

4. See plaintiff United States' Brief of October 21, 1976 at p. 3, n.1.

5. The defendants originally filed a Motion to Dismiss on October 21, 1976. By order of this Court on October 29, 1976, the Motion to Dismiss was deemed a motion for summary judg-ment pursuant to Rule 12(b), *Fed.R.Civ.P.*, to the extent that it raised the affirmative defense of *res judicata* and was denied in all other respects. That motion is referred to throughout this opinion as the motion for summary judgment.

*lines Company v. Texas International Airlines Inc.*, 546 F.2d 84, 95 (5th Cir. 1977).[6]

▮ The United States has not succeeded to any interest in property and did not control the original suit in *Wilson* or *Ballas*. The more difficult issue is whether the interests of the United States were represented adequately in *Ballas* and *Wilson*, and after careful consideration, this Court concludes that they were not.

The government's interest here is twofold: first, in terms of the scope of the group of individuals whose rights are being violated, protecting the voting rights of all college students who are required to complete the questionnaire as a condition of registration in Waller County, and, second, in terms of the substantive scope of the alleged violations, preventing the erosion of the Fourteenth, Fifteenth, or Twenty Sixth Amendment, and the legislation enacted thereunder by virtue of voter registration practices which discriminate on the basis of race or age.

In *Wilson* and *Ballas* the only interests represented were the voting rights of the named plaintiffs, neither case having proceeded as a class action. In *Wilson* the plaintiffs themselves voluntarily dropped a class allegation from the original complaint. In *Ballas* the District Court determined that the suit was not properly maintainable as a class action.

Defendants, however, argue that in *Ballas* the Fifth Circuit did find a class from the record before it, defining that class as "those who protest the use of the questionnaire *per se*".[7] This contention lacks merit. On appeal the issue of whether or not the suit was properly maintainable as a class action was expressly held to be moot. The Court of Appeals stated,

> Our holding that the questionnaire may be used to assist the registrar in determining the residency of a voter applicant moots the class action question. Since no constitutional or statutory violation flows from the mere use of the questionnaire in determining residency, the rights of per-

---

**6.** The principle of *res judicata* is grounded on the need for judicial finality, for conservation of judicial time and effort, but the principle is circumscribed by the due process requirement that one not be deprived of his day in court. 1B J. Moore, Federal Practice ¶ 0.405, at 622 and ¶ 0.411, at 1252 (2d ed. 1974). To this end the principle binds a non-party to a judgment when the relationship between a party and the non-party is not too attenuated. *Southwest Airlines Company*, 546 F.2d at 95. Historically, the doctrine of privity has been used to identify that relationship which is sufficiently close to justify *res judicata* applicability, but other terms such as virtual representation and substantial identity have been used to describe the relationship, too. "The underlying principle and the result are the same", however, whether the relationship be described as privity or some other term, 1B J. Moore, Federal Practice ¶ 0.411[1], at 1255 (2d ed. 1974), and the Fifth Circuit recognized in *Southwest Airlines Company*, 546 F.2d at 94–96, that the relationship, not its label, is controlling. Thus, in keeping with this admonition, the Court does not attempt to make nice distinctions as to semantics but rather attempts to focus on the instant relationships and the examples of those skeletal relationships recognized by the Fifth Circuit as being "sufficiently close to justify preclusion" set out above.

**7.** The context of the language the defendants quote as a class certification indicates that the Court was not certifying a class. After upholding the questionnaire as a legitimate step in a three tier procedure to determine the residency of voter applicants and after holding the class action question moot because the rights of persons denied registration after completing the questionnaire have not been infringed, the Court states:

> This decision is limited, however, to the determination that the registrar's use of the questionnaire solely to ascertain residency is valid. We voice no opinion as to the merits of any individual case which might show that Symm's use of the questionnaire is for other purposes. On the record before us, however, there is no allegation or proof that any class of persons is represented or exists other than those who protest the use of the questionnaire *per se*.

*Ballas*, 494 F.2d at 1172. Merely emphasizing the limits of its opinion, the Court notes that the only class alleged and of which there is any proof at all consists of those who protest the use of the questionnaire *per se*. The Court, by saying that there was no proof of any class other than those who protest the use of the questionnaire *per se*, is not thereby making a finding that the plaintiff had met his burden of proof in showing that such a class should be certified.

sons denied registration after completing the questionnaire have not been infringed.

*Ballas,* 494 F.2d at 1172. In other words, because the challenge to the use of the questionnaire failed, it made no difference whether the plaintiff represented only himself or a class, thus making a class determination unnecessary.[8] Accordingly, the only interests adequately represented by the plaintiffs in *Ballas* and *Wilson* were the voting rights of the individual plaintiffs.

Because the plaintiffs in *Ballas* and *Wilson* were never deemed adequate class representatives and the cases were not certified as class actions, any Waller County student not a party to those cases could now challenge the validity of the questionnaire on the same grounds, and it follows that the United States should similarly not be barred from representing the interests of those students. A persuasively similar case, *Black Voters v. McDonough,* 421 F.Supp. 165 (D.Mass.1976), involved a class action attack on at-large voting procedures for election of members of the Boston school committee. The defendants argued that the suit was barred by a prior suit in which a final judgment as to the validity of the voting procedures had been rendered. Analyzing the applicability of *res judicata,* the Court in *McDonough* held that no class was ever certified in the first case, that the judgment bound only the parties named in the first suit and those in privity with them,

and that the parties in *McDonough* were not the same or in privity to those in the first suit.

■ Comparing the twofold interest of the United States mentioned above to the interests represented by the *Ballas* and *Wilson* plaintiffs, not only did those prior plaintiffs fail to adequately represent the interest of the United States in terms of protecting the voting rights of Waller County students who were not parties to the first two suits, but also in a substantive sense the prior plaintiffs wholly failed to represent the United States' interest in obtaining an adjudication as to possible racial discrimination in violation of the Fourteenth and Fifteenth Amendments and the legislation enacted thereunder. In *Wilson* the plaintiffs, although black, voluntarily dropped their racial discrimination challenge from the original complaint. In *Ballas,* the plaintiff, a white, did not allege racial discrimination and, in fact, stated in his complaint that racial discrimination was irrelevant to his suit.[9] Consequently, this Court concludes that the government's interest in obtaining a judicial determination of whether the questionnaire is racially discriminatory has not been adequately represented in *Ballas* or *Wilson.* For the reasons stated above, the principle of *res judicata* does not apply here, rendering it unnecessary to determine whether or not the causes of action are the

---

**8.** Additionally, the Court's failure to demonstrably apply the class tests enumerated in Rule 23 of the Federal Rules of Civil Procedure indicates that it did not intend that an actual class certification be gleaned from its opinion. Class certification is a discretionary decision for the district court, the standard of appellate review being abuse of discretion. *Johnson v. Georgia Highway Express,* 417 F.2d 1122 (5th Cir. 1969) and *Shumate & Co. Inc. v. National Association of Securities Dealers, Inc.,* 509 F.2d 147 (5th Cir. 1975). In *Johnson* and *Shumate,* however, the District Court made a determination based on the application of the Rule 23 tests, whereas in *Ballas* the District Court's declination to certify the class was motivated by considerations of mootness and *res judicata.* There is some authority for appellate court

review of the merits of a district court class decision when Rule 23 has not been applied, 3B J. Moore, Federal Practice ¶ 23.97 at 23–1951 (2d ed. 1976), but when the appellate court determines the merits of a class allegation it applies the Rule 23 tests to the record before it. See, e. g., *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2nd Cir. 1968), *Green v. Wolf Corporation,* 406 F.2d 291 (2nd Cir. 1968) and *Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1968). That the Fifth Circuit did not demonstrably apply Rule 23 to the record before it eliminates any doubt as to the language cited by the defendants having any effect other than emphasizing the limits of the opinion.

**9.** *Ballas,* 351 F.Supp. at 889.

same.[10] The defendants' motion for summary judgment will be denied.[11]

## III. ABSTENTION

Having determined that *res judicata* does not bar the federal or state claims in this suit, the Court must next determine whether it should abstain from adjudicating the federal claims pending a resolution in state court of the state claims. As was pointed out in Part I, *supra*, the major substantive difference between the present case and the *Ballas* and *Wilson* cases is the statewide scope of the discrimination alleged here. Rather than merely complaining of the treatment of students vis-à-vis non-students in Waller County, the present suit complains of the treatment of the predominantly black student population in Waller County vis-à-vis the student population in every other county in Texas wherein institutions of higher learning are located. Rather than complaining of the use of the residency questionnaire *per se*, the failure to obtain statewide uniformity in its use or disuse is complained of. The United States contends that state law imposes a duty upon the Texas Secretary of State and Attorney General to prohibit the nonuniform use of a residency questionnaire. Thus, it is precisely this claim of an impermissible lack of statewide uniformity that not only distinguishes this case from *Ballas* and *Wilson*, but also raises a serious abstention question.

Under the well-known doctrine of *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), a federal court should abstain from adjudicating a federal constitutional claim when there are unsettled questions of state law that may be dispositive of the case. The policy considerations underlying the

*Pullman* abstention doctrine were set forth by the Supreme Court in *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 1181–1182, 14 L.Ed.2d 50 (1965) as follows:

> In applying the doctrine of abstention, a federal court is vested with discretion to decline to exercise or to postpone the exercise of its jurisdiction in deference to state court resolution of underlying issues of state law. Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication. [citation omitted]

The first requirement of a *Pullman* abstention is the presence of an uncertain issue of state law. The question of state law raised by this suit is whether the use by the Waller County registrar of a questionnaire as a part of his voter registration procedure is a practice which the Texas Secretary of State and Attorney General have a duty under state law to prohibit in order to bring Waller County procedures in line with the procedures used elsewhere in the State of Texas. The Texas Election Code designates the Secretary of State as the chief election officer and makes it his responsibility "to obtain and maintain uniformity in the application, operation, and interpretation of the election laws" through the issuance of directives to appropriate local officials. Tex. Election Code, art. 1.03. Pursuant to this statutory provision, in 1972 the Texas Secretary of State attempted to

---

10. Defendants argue that the United States' failure to participate in the cause of action earlier by initiating suit prior to *Wilson*, by intervening in *Wilson*, by initiating suit on behalf of the alleged class in *Ballas*, by intervening in *Ballas*, or by appearing by special leave in *Ballas* on appeal, "supplies the Defendants' claim of res judicata with particular force" (See Brief in Support of Defendants' Motion to Dismiss, p. 24), but when *res judicata* is simply not applicable, as is the case here, such "particular force" is of no avail.

11. Although *Ballas* and *Wilson* are not *res judicata* of the claims in this suit, the Court intimates no opinion as to the *stare decisis* effect of those decisions. *Res judicata* was reached at this time because, had it been applicable, it would have been a procedural bar to re-litigating the underlying factual merits of the suit. *Stare decisis*, on the other hand, goes to the legal effect to be given the factual determinations made after a trial on the merits and therefore should not be considered prior to a determination of the propriety of abstention.

prohibit the use of residency questionnaires by issuing a bulletin which stated that:

No county registrar may require any affidavits or questionnaires in addition to the information required on the application for a voter-registration certificate.

In *Ballas v. Symm,* 351 F.Supp. at 888, the District Court considered the effect of the 1972 bulletin and found that the bulletin was merely an advisory opinion, unenforceable at law and without binding effect on the county registrars. In 1975, apparently in response to the *Ballas* ruling, the Texas Legislature added Article 5.02(b)[12] to the Texas Election Code which, *inter alia,* provides for enforcement of the directives of the Secretary of State by way of injunctions obtained by the Attorney General. There have been no state court decisions interpreting Article 5.02(b) or in any way elucidating the extent of the Secretary of State's power and duty to obtain uniformity in the voter registration procedures of county registrars.[13] It would appear, therefore, that the Court is confronted with an unsettled question of state law.

To abstain under *Pullman* the Court must also determine that the resolution of the uncertain issue of state law might clarify or eliminate the federal constitutional issue. If the state courts here should hold that the Texas Secretary of State has the power to regulate county voter registration procedures and that the use of the questionnaire in Waller County is of such significance and is at such a variance with the voter registration procedures used elsewhere in Texas that the Texas Secretary of State and Attorney General have a duty under the Texas Election Code to prohibit its use, then the Fourteenth, Fifteenth, and Twenty Sixth Amendment issues in this suit would be rendered moot. Moreover, even if the state courts should hold that the use of the questionnaire by the Waller County registrar is not subject to the regulation of the Texas Secretary of State and Attorney General, the constitutional claims in this case would be clarified by establishing which state officers are responsible for the alleged constitutional violations.

Another factor supporting abstention in this case is the nature of the state law issue involved. The question of the relative rights and responsibilities of the Secretary of State and the county registrars in interpreting and applying the Texas Election Code is a delicate matter of state administration affecting the balance of power between state and local officials. Moreover, as was stated by Justice Black in *Oregon v. Mitchell,* 400 U.S. 112, 125, 91 S.Ct. 260, 265, 27 L.Ed.2d 272 (1970):

No function is more essential to the separate and independent existence of the States and their governments than the power to determine within the limits of the Constitution the qualifications of

---

12. Article 5.02(b), Tex. Election Code, provides that:

All citizens of this state who are otherwise qualified by law to vote at any election of this state or any district, county, municipality, or the political subdivision, shall be entitled and allowed to vote at all such elections. The Secretary of State shall, by directive, implement the policies stated herein throughout the elective procedures and policies by or under authority of this state. Enforcement of any directive of the Secretary of State pursuant to this section may be by injunction obtained by the Attorney General.

13. Defendants Symm and Waller County argue that this question of state law was settled by the decision of the Texas Supreme Court in *Bullock v. Calvert,* 480 S.W.2d 367 (Tex.1972). In *Bullock* the Texas Supreme Court considered the question of whether the Secretary of State could pay for the expenses of primary elections out of state funds after the Texas system of financing primaries by filing fees had been declared unconstitutional. The Secretary of State contended that the expenditure of state funds was authorized because he had determined in his capacity as the chief election officer pursuant to Article 1.03 of the Texas Election Code that uniformity could not be obtained in the holding of the approaching primaries without such expenditure. The Texas Supreme Court held that Article 1.03 did not empower the Secretary of State to expend state money because the Texas Constitution required legislative authorization and appropriation for the expenditure of public funds. The holding of *Bullock* is thus limited to an unusual factual situation involving the authority of the Secretary of State to expend state funds and in no way settles or even touches upon the power of the Secretary of State to prohibit variances in the voter registration practices of the various county registrars.

their own voters for state, county, and municipal offices and the nature of their own machinery for filling local public offices.

For that reason, the Fifth Circuit in a student voting rights case ordered the district court to abstain, holding that:

> In a matter of such importance to the States and their governments, a federal court should be slow to intervene, but should instead avoid needless conflict with the administration by the State of its own affairs.

*Harris v. Samuels,* 440 F.2d 748, 752 (5th Cir. 1971).

It should also be noted that those who attack the use of the Waller County questionnaire are not in a position to complain of the piecemeal adjudication and concomitant delay in obtaining an ultimate decision which abstention will generate. The Waller County registrar has utilized the disputed questionnaire in the same form and substantially the same fashion since 1971.[14] There appears to be no reason why the present claims could not have been pursued in either the *Wilson* or *Ballas* suits, which were filed in 1971 and 1972, respectively. If the United States felt that its interests were not adequately represented by the plaintiffs in *Wilson* or *Ballas,* the United States could have intervened in those suits. Instead, the United States and those who complain of the use of the questionnaire in Waller County have attacked this practice in piecemeal fashion in three different suits over a period of five years. The party in this suit who has cause to complain of piecemeal adjudication and delay is defendant

Symm, the registrar of Waller County. However, it appears that Symm will not be prejudiced by the delay attendant to an abstention in this case because he will be free to continue to utilize his questionnaire during the period of the abstention. It is noteworthy that the other defendants, the State of Texas, the Texas Secretary of State, and the Texas Attorney General, all favor abstention in this case.

■ For the foregoing reasons, the Court concludes that the special circumstances necessary to justify a *Pullman* abstention are present in this case. Indeed, the United States does not contend otherwise, but opposes abstention solely on the basis that actions brought under 42 U.S.C. §§ 1971 and 1973 constitute a *per se* exception to the abstention doctrine because those statutes vest the Court with mandatory federal jurisdiction.[15] It is unclear exactly what meaning the United States attaches to the term "mandatory" federal jurisdiction. It has long been recognized that abstention "does not . . . involve the abdication of federal jurisdiction, but only the postponement of its exercise." *Harrison v. NAACP,* 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959).

The United States cites *U. S. v. Wood,* 295 F.2d 772 (5th Cir. 1961), *cert. denied,* 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1961),[16] in support of its theory that the Court has mandatory jurisdiction over claims under 42 U.S.C. §§ 1971 and 1973 and that mandatory jurisdiction precludes abstention. In *U. S. v. Wood* the Government sought temporary injunctive relief

---

**14.** See Affidavit of Le Roy Symm, filed on November 19, 1976 at p. 3.

**15.** It should be noted in this regard that the Court by Minute Entry of February 17, 1977 indicated its concern about whether the United States had an adequate remedy in state court to obtain an adjudication of the state law issues and requested briefing on that point. The United States apparently concedes that it has an adequate state remedy inasmuch as its brief makes no attempt to show otherwise. The defendants in their briefs agreed that adequate state remedies are available to the United States. It would appear to the Court that the

United States could seek declaratory, mandatory injunctive, or mandamus relief in state court. *See Leiter Minerals, Inc. v. U. S.,* 352 U.S. 220, 228–29, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957). In the absence of any showing to the contrary, the Court will not presume the state remedies to be inadequate. *See Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**16.** The only other case cited by the United States, *U. S. v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960), is wholly inapposite to the propriety of abstention.

under 42 U.S.C. § 1971 to restrain defendants from prosecuting a Negro in state court on the theory that the prosecution would intimidate Negroes in that Mississippi county from registering to vote. The district court denied relief on the basis of the Supreme Court's holding in *Douglas v. City of Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). In *Douglas,* the Supreme Court held that even though the threatened arrests and prosecutions sought to be enjoined in that case might actually deter the exercise of constitutional rights, such deterrence would not be judicially recognized as satisfying the equitable requirement of irreparable injury because comity precluded interference with the state criminal system when adequate safeguards existed in the state proceedings. In other words, the affirmative defense of adequate state remedies precluded a finding of irreparable federal injury.

The Fifth Circuit in *Wood, supra,* nevertheless, reversed the denial of injunctive relief, pointing out first that jurisdiction under the Civil Rights Act was mandatory and therefore the district court did not have the discretionary latitude traditionally accorded courts of equity when considering requests for injunctive relief. Secondly, the Court of Appeals distinguished *Douglas v. City of Jeannette, supra,* by holding that the defense of adequate state remedies had been eliminated by 42 U.S.C. § 1971(d), which provides that jurisdiction under § 1971 shall be exercised "without regard to whether the party aggrieved shall have exhausted any administrative or other remedies that may be provided by law."

 Although *U. S. v. Wood, supra,* makes clear that state remedies need not be

exhausted to bring a suit under 42 U.S.C. § 1971, it in no way holds or indicates that where there is an *unsettled* question of state law that might obviate the need for adjudicating federal constitutional claims a federal court might not postpone deciding the federal issues pending a resolution in state court of the state issues. It must be recognized that abstention and exhaustion of state remedies are distinct doctrines serving different purposes. Exhaustion of state remedies is required in certain classes of cases in order to give the state courts as a matter of comity the opportunity to make the initial determination as to all claims, federal or state, raised in those cases.[17] *Pullman* abstention, on the other hand, is required not simply because a state remedy is available, but because there is an uncertain question of state law which the state courts are better able to resolve and which may make a constitutional adjudication unnecessary.[18]

Although it has been suggested that an exception to the abstention doctrine should be judicially created for civil rights and voting rights cases,[19] the Supreme Court has declined to create any such *per se* exception. In *Harrison v. NAACP,* 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959), the Supreme Court was squarely confronted with the question of the applicability of the abstention doctrine in a civil rights case and held that abstention was appropriate. *See also, Askew v. Hargrave,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). In *Manard v. Miller,* 53 F.R.D. 610 (1971), *aff'd mem.,* 405 U.S. 982, 92 S.Ct. 1253, 31 L.Ed.2d 449 (1972), the Supreme Court affirmed an abstention by a three-judge district court in a student voting rights case.[20] Accordingly,

---

17. See, e. g., *Darr v. Burford,* 339 U.S. 200, 203–05, 70 S.Ct. 587, 94 L.Ed. 761 (1950), for a discussion of the purpose of the exhaustion doctrine in the context of habeas corpus actions filed by state prisoners.

18. See *McNeese v. Board of Education for Community Unit School District 187, Cahokia, Ill.,* 373 U.S. 668, 673–74, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) where the Supreme Court held that exhaustion of state administrative

remedies was unnecessary, but distinguished the abstention cases.

19. See, e. g., Wechsler, "Federal Jurisdiction and the Revision of the Judicial Code", 13 L. & Contemp.Prob. 216, 230 (1948).

20. It should also be pointed out that in *Ballas v. Symm,* 494 F.2d 1167 (5th Cir. 1974) the primary claim alleged was a violation of 42 U.S.C. § 1971(a)(2)(A). The Fifth Circuit considered the propriety of abstention based on the exist-

the Court is of the opinion that there is no exception to the abstention doctrine which would automatically preclude the Court from abstaining in this case.

■ Having determined that the prerequisites to a *Pullman* abstention are satisfied here, and that the Court should abstain from deciding this suit pending determination of the state law issues in state court, the proper procedure normally would be for the Court to enter a stay order and retain jurisdiction of the case. The Texas Supreme Court, however, has ruled that the state courts cannot entertain a suit for a declaratory judgment as to state law issues if a federal court retains jurisdiction over the federal claim. *United Services Life Ins. Co. v. Delaney,* 396 S.W.2d 855 (Tex.1965). In order to avoid the possibility that some state remedies might otherwise be foreclosed to the United States, this case will be dismissed without prejudice to its re-filing after a final determination by the state courts of the state law issues. *See Harris County Commissioners Court v. Moore,* 420 U.S. 77, 88 n. 14, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975).

Final judgment will be entered of even date denying the motion of defendants Symm and Waller County for summary judgment and dismissing this case without prejudice pursuant to the Court's abstention.[21]

The Clerk shall file this Memorandum Opinion and send a copy to each counsel.

ence of the state law issue of whether Ballas was a resident of Waller County. Abstention was found to be inappropriate solely because the state law issue would not eliminate or clarify the federal issue of whether Ballas could be subjected to the questionnaire in making the residency determination. The Fifth Circuit in no way indicated that such cases were automatically excluded from application of the abstention doctrine and its analysis of the abstention issue clearly implies the contrary.

21. In light of the Court's decision to abstain from adjudicating the merits of this case at this time, the Court does not reach the United States' Motions for a Preliminary Injunction and for Summary Judgment. *See Ballas v. Symm, supra,* 494 F.2d at 1169.