Humphrey L. SHUFORD, et al., Plaintiffs,

v.

ALABAMA STATE BOARD OF EDUCATION, et al., Defendants.

Civ. A. No. 89–T–196–N.

United States District Court, M.D. Alabama, Northern Division.

March 20, 1996.

Terry G. Davis, Amardo Wesley Pitters, Terry G. Davis, P.C., Montgomery, AL, Mark Englehart, Anita L. Kelly, Kenneth Lamar Thomas, Thomas, Means & Gillis, P.C., Montgomery, AL, for Humphrey L. Shuford.

James U. Blacksher, Birmingham, AL, Leslie Proll, Birmingham, AL, John C. Falk-

enberry, Sirote & Permutt, Birmingham, AL, Joe R. Whatley, Jr., Cooper, Mitch, Crawford, Kuydendall & Whatley, Birmingham, AL, for Connie Johnson.

James U. Blacksher, Birmingham, AL, Joe R. Whatley, Jr., Andrew Clay Allen, Cooper, Mitch, Crawford, Kuydendall & Whatley, Birmingham, AL, Rebecca H. Hunt, Haskell, Slaughter, Young, Johnston & Gallion, Birmingham, AL, for Karen Newton.

Terry G. Davis, Amardo Wesley Pitters, Montgomery, AL, Anita L. Kelly, Kenneth Lamar Thomas, Thomas, Means & Gillis, P.C., Montgomery, AL, for Kenneth A. Brackins.

Thomas T. Gallion, III, Haskell, Slaughter, Young, Johnston & Gallion, Montgomery, AL, Beverly Ann Poole Baker, Richard H. Walston, Rebecca H. Hunt, Michael K.K. Choy, Haskell, Slaughter, Young, Johnston & Gallion, Birmingham, AL, for Myra P. Davis and SHERYL B. THREATT.

Terry G. Davis, Amardo Wesley Pitters, Montgomery, AL, Willie Troy Massey, W. Troy Massey, P.C., Montgomery, AL, Solomon S. Seay, Jr., Montgomery, AL, Mark Englehart, Kenneth Lamar Thomas, Thomas, Means & Gillis, P.C., Montgomery, AL, for Thad C. McClammy and Ella Jones.

Edward M. George, Jeffery A. Foshee, Foshee & Associates, Montgomery, AL, J. Mason Davis, Sirote & Permutt, Birmingham, AL, J. Allen Schreiber, Gerald Alan Templeton, Catherine L. Hogewood, Lloyd, Schreiber, Gray & Gaines, P.C., Birmingham, AL, Anthony A. Joseph, Helen Kathryn Downs, Johnston, Barton, Proctor & Powell, Birmingham, AL, R. Scott Clark, Whiteside & Fitzpatrick, Birmingham, AL, Renee Culverhouse, Office of General Counsel, State of Alabama, Department of Postsecondary Education, Montgomery, AL, for Alabama State Board of Education and Fred Gainous.

Edward M. George, Jeffery A. Foshee, Foshee & Associates, Montgomery, AL, J. Mason Davis, Sirote & Permutt, Birmingham, AL, J. Allen Schreiber, Gerald Alan Templeton, Lloyd, Schreiber, Gray & Gaines, P.C., Birmingham, AL, Anthony A. Joseph, Helen Kathryn Downs, Johnston, Barton, Proctor & Powell, Birmingham, AL, for John

M. Tyson, Jr., Stedman Shealy, Jr., Isabelle Thomasson, Spencer Bachus, Victor Poole, and Evelyn S. Pratt.

Edward M. George, Jeffery A. Foshee, Foshee & Associates, Montgomery, AL, J. Mason Davis, Sirote & Permutt, Birmingham, AL, J. Allen Schreiber, Gerald Alan Templeton, Catherine L. Hogewood, Lloyd, Schreiber, Gray & Gaines, P.C., Birmingham, AL, Anthony A. Joseph, Helen Kathryn Downs, Johnston, Barton, Proctor & Powell, Birmingham, AL, for Ethel Hall and Willie Paul.

Randall C. Morgan, Terry Alan Sides, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, J. Mason Davis, Sirote & Permutt, Birmingham, AL, J. Allen Schreiber, Lloyd, Schreiber, Gray & Gaines, P.C., Birmingham, AL, for Malcom A. Jones.

Randall C. Morgan, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, Jeffery A. Foshee, Foshee & Associates, Montgomery, AL, J. Mason Davis, Sirote & Permutt, Birmingham, AL, J. Allen Schreiber, Gerald Alan Templeton, Catherine L. Hogewood, Lloyd, Schreiber, Gray & Gaines, P.C., Birmingham, AL, for Larry McCoy, Northwest Shoals Community College, Bevill State Community College, Harold Wade.

Randall C. Morgan, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, Jeffery A. Foshee, Foshee & Associates, Montgomery, AL, J. Mason Davis, Sirote & Permutt, Birmingham, AL, J. Allen Schreiber, Gerald Alan Templeton, Lloyd, Schreiber, Gray & Gaines, P.C., Birmingham, AL, for Atmore State Technical College, Betty Fine Collins, Tazewell Shepherd, and Dan Cleckler.

Jeffery A. Foshee, Foshee & Associates, Montgomery, AL, J. Mason Davis, Sirote & Permutt, Birmingham, AL, J. Allen Schreiber, Gerald Alan Templeton, Catherine L. Hogewood, Lloyd, Schreiber, Gray & Gaines,

P.C., Birmingham, AL, for Lawson State Community College and Perry W. Ward.

Gerald Alan Templeton, Catherine L. Hogewood, Lloyd, Schreiber, Gray & Gaines, P.C., Birmingham, AL, Anthony A. Joseph, Helen Kathryn Downs, Johnston, Barton, Proctor & Powell, Birmingham, AL, R. Scott Clark, Whiteside & Fitzpatrick, Birmingham, AL, for Fob James, Bradley Byrne, G.J. Higginbotham, Stephanie Bell, David F. Byers, Jr., Sandra Ray, Mary Jane Caylor, Earl Roberson, and Trenholm State Technical College.

James M. Parker, Jr., Johnston, Barton, Proctor & Powell, Birmingham, AL, Raymond P. Fitzpatrick, Jr., Whiteside & Fitzpatrick, Birmingham, AL, for Jamie C. Moncrief, and Thomas L. Davis.

Before JOEL F. DUBINA, Circuit Judge, MYRON H. THOMPSON, Chief District Judge, and W. HAROLD ALBRITTON, District Judge.

MYRON H. THOMPSON, Chief Judge.

### ORDER

The issue presented to this three-judge court is whether officials of the State of Alabama failed to obtain preclearance for a change from staggered to concurrent terms for members of the State Board of Education, in violation of § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C.A. § 1973c. We hold that State officials should have but failed to obtain preclearance for the change.

### I.

In 1969, the Alabama Legislature passed a law, now codified as § 16–3–1 of the 1975 Alabama Code, providing for staggered four-year terms for the eight-member State Board of Education, with only four members elected at a time.[1] To effect this procedure,

---

1. Section 16–3–1 provides the following:

    "The State Board of Education shall be composed of the Governor as an ex officio member and eight members elected as hereinafter provided. One of such members shall be elected by the qualified electors of each congressional district at the general election held in 1970. Of the eight members elected by congressional

district in 1970, those members elected from the first, third, fifth and seventh congressional districts shall serve for two years; those elected from the second, fourth, sixth and eighth districts shall serve for four years. Thereafter, the members of the board shall serve for terms of four years each, and the member from each congressional district shall be elected by the

the law required that, in 1970, four members would be elected for two years and four members elected for four years, with all eight members elected for four-year terms thereafter. Section 16–3–1 was precleared by the Attorney General of the United States in accordance with § 5 of the Voting Rights Act.[2] The staggered-term-election procedure was followed beginning with the elections in 1970.

In 1984, in *Watkins v. Alabama State Board of Education,* No. 84–H–746–N (M.D.Ala.), a court held that the districting plan for electing State Board members was unconstitutional because it violated the "one-person, one-vote" principle.[3] State officials were enjoined from holding elections pursuant to the plan.[4] The court adopted a plan drawn and submitted by the plaintiff,[5] and the plan was precleared by the United States Attorney General.[6] However, rather than reinstate the staggered four-year term scheme in the manner provided in § 16–3–1—that is, with four State Board members initially elected for two years, four members initially elected for four years, and all eight members elected for four-year terms thereafter—the State Board allowed all eight members to be elected for four-year terms in 1986 based upon the newly approved plan, and, since that time, all members have been elected to concurrent four-year terms.[7]

On April 21, 1995, plaintiff-intervenor Thad McClammy, an African–American, filed a complaint-in-intervention in this lawsuit, *Shuford v. Alabama State Bd. of Educ.,* No. 89–T–196–N (M.D.Ala.). The *Shuford* litigation is a long-running class-action lawsuit challenging the hiring and promotion practices in Alabama's postsecondary education system as racially discriminatory. In his complaint-in-intervention, McClammy

claimed, among other things, that State officials had removed him as President of Trenholm State Technical College in Montgomery because of his race, in violation of an earlier consent decree in *Shuford* and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17. In addition, McClammy claimed that these officials had violated § 5 of the Voting Rights Act by not obtaining preclearance for the change from staggered to concurrent election terms for members of the State Board of Education. The defendants are the Governor of Alabama, the Chancellor of Postsecondary Education, and the Alabama State Board of Education and its members. This three-judge court was empaneled to hear only McClammy's § 5 claim.[8]

## II.

■ Section 5 of the Voting Rights Act requires that certain jurisdictions, including the State of Alabama, obtain preclearance of any change in a "standard, practice or procedure with respect to voting," 42 U.S.C.A. § 1973c, that has the "potential for discrimination" against African–Americans. *NAACP v. Hampton County Election Commission,* 470 U.S. 166, 181, 105 S.Ct. 1128, 1137, 84 L.Ed.2d 124 (1985) (emphasis omitted). A jurisdiction may obtain preclearance in either of two ways: by securing a determination from the United States District Court for the District of Columbia that the change "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color," 42 U.S.C.A. § 1973c; or by submitting the change to the Attorney General of the United States and receiving no objection. *Id.* Under § 5, the scope of the three-judge court's inquiry is limited to whether a change "is covered by § 5, but has not been subjected to the re-

---

qualified electors of the district at the general election immediately preceding the expiration of the term of office of the member representing such district on the board and every four years thereafter."

2. Stipulations of fact, filed September 15, 1995, at ¶ 2.

3. *Id.* at ¶ 4; Joint record: defendants' evidence, filed September 11, 1995, at 46–51.

4. Stipulations of fact, filed September 15, 1995, at ¶ 4.

5. *Id.* at ¶ 5.

6. *Id.* at ¶ 6.

7. *Id.* at ¶ 8, 10.

8. McClammy's other claims are pending before the single-judge court.

quired federal scrutiny." *Allen v. State Board of Elections,* 393 U.S. 544, 561, 89 S.Ct. 817, 829, 22 L.Ed.2d 1 (1969).

As stated, McClammy claims that the defendants violated § 5 by not obtaining preclearance for the change from staggered to concurrent terms for State Board members. The defendants contend that the change was not within the scope of § 5 and did not require preclearance. In the alternative, they contend that, if the change was within the scope of § 5, it was precleared as part of the court's order in *Watkins.* In addition, they contend that McClammy's claim is barred by the doctrines of res judicata and laches. We first address the defendants' res judicata and laches defenses.

### A.

■ The defendants contend that McClammy's § 5 claim is barred by the doctrine of res judicata because the plaintiffs in the *Watkins* and *Shuford* litigation could have raised the claim. "The application of res judicata requires that: (1) the issue contested in both proceedings be identical; (2) the parties to the subsequent proceeding are the same as, or are in privity with, the parties to the earlier proceeding; and (3) the earlier proceeding resulted in a final judgment on the merits." *Baptiste v. Commissioner of Internal Revenue,* 29 F.3d 1533, 1539 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1251, 131 L.Ed.2d 133 (1995). As to the first element, res judicata "operates to preclude not only the issues raised in the prior action but issues which could have been raised in the prior action," *NAACP v. Hunt,* 891 F.2d 1555, 1561 (11th Cir.1990), if those issues "ar[ose] out of the same nucleus of operative facts." *Wesch v. Folsom,* 6 F.3d 1465, 1471 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 696, 126 L.Ed.2d 663 (1994).

■ The *Watkins* litigation was a voting rights case involving the State Board of Education. It is undisputed that the plaintiff in *Watkins* represented a certified class of "electors of State Board of Education districts whose votes have been, are being, and will be diluted on the basis of population within their geographic districts." [9] However, the change from staggered to concurrent terms was never an issue in that case and was never mentioned in the court's order. Nor could the change have been a part of the complaint in *Watkins* because at the time the lawsuit was filed, the State Board members were elected for staggered terms. The State abandoned the staggered-term scheme after entry of the *Watkins* court order.

■ The *Shuford* litigation was initiated after the State had abandoned the staggered-election scheme for concurrent terms. It was originally filed in 1989 by plaintiff Humphrey L. Shuford, an African-American, claiming that the hiring and promotion practices of Alabama's postsecondary system were racially discriminatory. He charged that the defendants had violated Title VII, 42 U.S.C.A. § 1981, and the fourteenth amendment to the United States Constitution, as enforced by 42 U.S.C.A. § 1983. He also asserted a claim under § 2 of the Voting Rights Act of 1965, amended, 42 U.S.C.A. § 1973. By order entered on March 15, 1994, the single-judge court certified a plaintiff class of African-Americans and approved a consent decree providing for individual and class-wide relief on Shuford's employment claims. *Shuford v. Alabama State Bd. of Educ.,* 846 F.Supp. 1511 (M.D.Ala.1994).[10] The § 2 voting rights claim was dismissed with prejudice as part of the consent decree. *Id.* at 1533. The defendants contend that McClammy is barred from introducing a § 5 voting rights claim in *Shuford* because the plaintiff class, of which McClammy is a member, could have reasonably included the claim as part of its § 2 voting rights claim.

**9.** Joint record: defendants' evidence, filed September 11, 1995, at 10, 44.

**10.** As part of their proposed consent decree, the parties stipulated to a " 'a class of Black citizens who have been or will be denied employment in or promotion to presidential, full-time faculty

and other administrative and supervisory positions covered by salary schedules A, B, C, and D at community, junior, and technical colleges in the Alabama System of Postsecondary Education.' " *Shuford,* 846 F.Supp. at 1515 (quoting the decree).

McClammy responds that res judicata is inapplicable because substantial identity of parties does not exist. "Substantial identity" or "privity" exists "where the nonparty's interests were adequately represented by the party in the original suit" or where a party to the original suit is "so closely aligned to a nonparty's interest as to be his virtual representative." *Hunt*, 891 F.2d at 1560–61. We agree with McClammy.

■ A class action does not preclude subsequent suits as long as the class action was never certified. In *United States v. State of Texas*, 430 F.Supp. 920 (S.D.Tex.1977) (three-judge court), the government challenged the use of a questionnaire by the tax assessor in Waller County, Texas to determine if students at Prairie View A & M College were county residents for voting purposes. In two prior suits, students at Prairie View had unsuccessfully challenged the use of the questionnaire, and defendant therefore contended that the government's suit was barred by res judicata *Id.* at 924. The three-judge court found that the suit was not precluded. The court reasoned that, "Because the plaintiffs in [the earlier cases] were never deemed adequate class representatives and the cases were not certified as class actions, any Waller County student not a party to those cases could now challenge the validity of the questionnaire on the same grounds, and it follows that the United States should similarly not be barred from representing the interests of those students." *Id.* at 926.

Likewise, in *United States v. East Baton Rouge Parish School Board*, 594 F.2d 56 (5th Cir.1979), the government raised a challenge under the Voting Rights Act to the multimember ward system for electing school board members. The school board contended that the government's suit was barred by a prior unsuccessful suit brought by private plaintiffs. *Id.* at 57–58. The Fifth Circuit Court of Appeals relied on *United States v. Texas* as precedent in ruling that, "although the private suit was brought as a class action, the trial judge did not certify a class prior to the dismissal. Res judicata, therefore, could not properly apply to members of the putative class, or derivatively, to the United States." *Id.* at 58–59.

■ Although Shuford initially brought his § 2 voting rights claim on behalf of a class, the § 2 claim was not included among the claims for which class-wide relief was being sought.[11] The claim was dropped in both his motion for class certification and brief in support of the motion.[12] The class which was certified makes no mention of voting rights and refers only to employment and promotion opportunities in the Alabama's postsecondary education system.[13] Because a class was never certified in *Shuford* with regard to a § 2 claim, McClammy was never represented on a voting rights claim in that case, and, thus, McClammy's later § 5 claim is not precluded by res judicata.

■ The defendants further contend that McClammy's § 5 claim is barred by the equitable doctrine of laches because he waited through two election cycles before filing suit. A defense of laches "requires proof of (1) lack of diligence against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961). " 'The law of laches, like the principle of the limitation of actions, was dictated by experience, and is founded in a salutary policy. The lapse of time carries with it the memory and life of witnesses, the muniments of evidence, and other means of proof.' " *Id.* (quoting *Brown v. County of Buena Vista*, 95 U.S. 157, 161, 24 L.Ed. 422 (1877)).

---

**11.** *See* Shuford's amended complaint, filed June 12, 1991, at ¶ 39 ("The policies and practices set out above, which delegate unfettered, autonomous control over the governance of the postsecondary institutions appointed to white presidents at a time when blacks were denied access to the political process, dilute the voting strength of plaintiff and the class of black citizens he seeks to represent, deny them equal access to the political processes of state government, and thus violate their rights under Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. section 1973").

**12.** *See* Shuford's motion for class certification, filed June 23, 1993; Shuford's memorandum brief in support of the motion for class certification, filed August 4, 1993.

**13.** *See supra* note 10.

▇ Assuming that laches applies to a § 5 claim, we find that McClammy's claim is not barred.[14] We do not need to reach the issue of diligence because there is no evidence of prejudice. The defendants have not shown a reason why it would be more difficult to litigate a § 5 claim today than it would have been if the claim had been raised at the time the staggered-election scheme was abandoned. The defendants argue that "candidates ran and the voters voted with the expectation that these elected officials would serve a four-year term."[15] Whether termed as laches or not, this is a concern, as we will explain later, that goes to the appropriate remedy; the claim should not be barred for this reason.

### B.

Having concluded that neither res judicata nor laches bars McClammy's § 5 claim, we now turn to the merits of the claim. The first issue is whether the change from staggered to concurrent terms is within the scope of § 5. The defendants do not question that a change from staggered to concurrent terms made by a jurisdiction would be covered by § 5. *See Berry v. Doles*, 438 U.S. 190, 191–193, 98 S.Ct. 2692, 2693–94, 57 L.Ed.2d 693 (1978); *United States v. Onslow County*, 683 F.Supp. 1021, 1024 (E.D.N.C.1988) (three-judge court).

▇ The defendants argue instead that the change here is not covered because it "did not reflect the 'exercise of legislative judgment' or 'the policy choices of elected representatives of the people'" but rather was a "court-ordered change."[16] We reject this argument for two reasons. First, the *Watkins* order did not require that the defendants abandon the staggered-term scheme. The defendants could have reinstated the scheme in the same manner as it had been initiated in 1970, that is, by maintaining the existing staggered terms and applying them to the redrawn districts.[17] Second, assuming that the *Watkins* order necessitated the change, preclearance was still required. The Code of Federal Regulations addresses situations in which changes in voting practices are not part of a court order but were necessitated by a court order. The Code provides that, "Where a court ordered change is not itself subject to the preclearance requirement, subsequent changes necessitated by the court order but decided upon by the jurisdiction remain subject to preclearance." 28 C.F.R. § 51.18(b).

▇ The defendants contend that, in any event, the change from staggered to concurrent terms was precleared as part of the plan submitted to the United States Attorney General during the *Watkins* litigation. We do not agree. The Supreme Court has stated that, because the "Attorney General has substantial responsibilities under § 5," a submitting jurisdiction must "identify with specificity each change that it wishes the Attorney General to consider." *Clark v. Roemer*, 500 U.S. 646, 658, 111 S.Ct. 2096, 2104, 114 L.Ed.2d 691 (1991). The Court offered the following rationale for the specificity requirement: "The Government represents to us

---

**14.** *See Henderson v. Graddick*, 641 F.Supp. 1192, 1200 (M.D.Ala.1986) (per curiam) (three-judge court) ("laches is not a defense to a Section 5 claim"); *Dotson v. City of Indianola*, 514 F.Supp. 397 (N.D.Miss.1981) (three-judge court) ("laches is not available for a private action for injunctive relief brought under Section 5 of the Voting Rights Act"), *aff'd* 456 U.S. 1002, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982); *but see Lopez v. Hale County*, 797 F.Supp. 547, 549–550 (N.D.Tex. 1992) (three-judge court) (laches is a factor given substantial weight in determining an equitable remedy in a § 5 case), *aff'd*, 506 U.S. 1042, 113 S.Ct. 954, 122 L.Ed.2d 112 (1993).

**15.** Defendants' brief, filed October 2, 1995, at 20.

**16.** *Id.* at 10 (quoting *Wesch v. Hunt*, 785 F.Supp. 1491, 1500 (S.D.Ala.) (three-judge court), *aff'd*,

504 U.S. 902, 112 S.Ct. 1926, 118 L.Ed.2d 535 (1992)).

**17.** The defendants argue that they were not required to return to the staggered-term scheme because the *Watkins* court held § 16–3–1 unconstitutional in its entirety. The argument is meritless. Although the *Watkins* court entered a declaration that § 16–3–1 was unconstitutional, the declaration was only as to the apportionment plan that had been adopted under the statute. Section 16–3–1 covers an array of matters, including that the State Board shall have eight members and that the governor shall be a member of the State Board. Obviously, the *Watkins* order did not intend to invalidate all the section's provisions.

that the Attorney General reviews an average of 17,000 electoral changes each year, and that within the 60–day preclearance period, he must for each change analyze demographics, voting patterns, and other local conditions to make the statutory judgment concerning the presence of a discriminatory purpose or effect." *Id.* (citing Brief for United States as Amicus Curiae 22, n. 18.). The Court concluded that there is a "presumption that 'any ambiguity in the scope of the preclearance request' must be construed against the submitting jurisdiction." *Id.* at 659, 111 S.Ct. at 2105.

In this case, the redistricting plan submitted to the Attorney General in *Watkins* did not mention that there would be a change from staggered to concurrent election terms. Given the specificity requirement and presumption that ambiguity must be construed against the submitting authority, we conclude that the change to concurrent terms was not precleared.

### C.

 In this case, McClammy has proposed three alternative remedies: that the terms of all State Board members should be vacated and a special election ordered; that the terms for members from the odd numbered districts should be vacated, and a special election should be held for those districts; and that special elections for the odd numbered districts should be ordered in 1996. Because the purpose of § 5 is "to prevent the institution of changes which might have the purpose or effect of denying or abridging the right to vote on account of race or color," *Perkins v. Matthews,* 400 U.S. 379, 385, 91 S.Ct. 431, 435, 27 L.Ed.2d 476 (1971), we are obligated, absent "unusual circumstances," to enjoin enforcement of a change that should have been precleared but was not. *Henderson v. Graddick,* 641 F.Supp. 1192, 1202 (M.D.Ala.1986) (per curiam) (three-judge court). "Special circumstances warranting an exception might be present where, because elections have already been held pursuant to an unprecleared

voting requirement, it would be inequitable to return completely to the status quo ante pending submission of the change for preclearance.... Under these circumstances ... 'it might be appropriate to enter an order affording local officials an opportunity to seek federal approval and ordering a new election only if local officials fail to do so or if the required federal approval is not forthcoming.'" *Hawthorne v. Baker,* 750 F.Supp. 1090, 1097 (M.D.Ala.1990) (three-judge court) (quoting *Perkins,* 400 U.S. at 396–97, 91 S.Ct. at 441 (1971)), *vacated as moot,* 499 U.S. 933, 111 S.Ct. 1408, 113 L.Ed.2d 440 (1991). Because we conclude that special circumstances are present, we will give the defendants 90 days to obtain preclearance for the change to concurrent terms if they wish to continue that practice, or to adopt another election scheme that complies with federal and state law. If the defendants fail to comply with this requirement within the time allowed, we will revisit the issue of remedy.[18]

It is so ORDERED.

---

18. We also note that the Alabama Legislature is currently in general session. This delay will give the State of Alabama, through its legislature, an opportunity to apply staggered terms to members from current districts if it is the will of the State not to continue the practice of concurrent terms.