**UNITED STATES of America, Plaintiff,**

v.

**ONSLOW COUNTY, et al., Defendants.**

No. 87–135–CIV–4.

United States District Court,
E.D. North Carolina,
New Bern Division.

April 19, 1988.

J. Douglas McCullough, Acting U.S. Atty., Raleigh, N.C., Gerald W. Jones, Steven H. Rosenbaum, Julie A. Riley, Attys., Voting Section Civ. Rights Div., Dept. of Justice, Washington, D.C., for plaintiff.

Michael Crowell, Tharrington, Smith & Hargrove, Raleigh, N.C., for defendants.

Before ERVIN, Circuit Judge, BRITT, Chief District Judge, and DUPREE, Senior District Judge.

## ORDER

BRITT, Chief District Judge.

This action was instituted on 30 December 1987 by the United States under the

---

Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973 seeking injunctive relief with regard to the election of the Board of Commissioners of Onslow County, North Carolina. Defendants are Onslow County, the Onslow County Board of Commissioners and its individual members, and the Onslow County Board of Elections and its individual members. In their answer defendants admit most of the essential allegations of the complaint. The matter is now before the court on motion by plaintiff for summary judgment. It appearing to the court that oral arguments would not aid in the decisional process, the matter will be adjudicated on the record.

## FACTUAL BACKGROUND

Onslow County, North Carolina, according to the 1980 census, had a population of 112,784 of whom 22,775 (20.2%) were black. The voting population at that time was 82,560 of whom 16,491 (20%) were black. The Board of Commissioners of Onslow County consists of five members, all of whom, since the passage of the Voting Rights Act, have been white.

On 1 November 1964 the Board of Commissioners served two-year terms and were nominated in partisan primaries from single-member districts and then elected at large by the voters of the entire county. In 1966 the method of nominating candidates for the Board of Commissioners was changed from a single-member district system to an at-large system pursuant to the provisions of a consent decree entered in a lawsuit then pending in this district. *Mendelson v. Walton*, No. 666 (E.D.N.C. Feb. 23, 1966). In 1969 the General Assembly of North Carolina enacted local legislation increasing the terms of the members of the Board of Commissioners to four years and providing that their terms would be staggered in such a manner that two members would be elected in presidential election years and three in even numbered nonpresidential election years. These changes were implemented in the elections held in 1970 and have been followed since that time.

It was not until 5 May 1987 that Onslow County sought clearance of the above voting changes by submissions to the Attorney General of the United States. On 6 July 1987 the Attorney General responded to the submission interposing an objection to the staggered terms but approving the at-large method of nomination and the four-year terms of office.

## CONTENTIONS

The disagreement of the parties, and the reason for this lawsuit, is straightforward, easy to identify and revolves around the relief to which plaintiff is entitled. Plaintiff contends that the court should declare all five seats on the Onslow County Board of Commissioners to be vacant and order an election to be held during 1988 to fill those seats. Defendants, on the other hand, contend that the election in 1988 should be only for those two members of the Board whose term normally expires in 1988 and that the remaining three Board members, who were elected in 1986, should continue in office. At the heart of defendants' contention is the argument that those commissioners who were elected in 1986 were *validly* elected and that their terms should not be cut short. Defendants also argue that it would be inequitable to set aside the results of the 1986 election because there is no evidence that defendants intentionally delayed seeking clearance for the voting rights changes, that those commissioners elected in 1986 would be required to run new campaigns after only two years and that these same commissioners are the ones who voluntarily submitted the changes for preclearance. At the heart of the contention of the defendants is their assertion that the four-year terms were first implemented in 1970; and, thus, commissioners elected every four years thereafter have been properly elected. Hence those elected in 1986, being in a four-year cycle dating from 1970, were properly elected.

Defendants also contend that they are powerless to effect the changes sought by the government inasmuch as the General Assembly of the State of North Carolina

alone has the authority to enact changes in election procedures.

## DISCUSSION

There being no genuine issue as to any material fact, disposition of this matter by summary judgment is appropriate. Fed.R. Civ.P. 56(c).

■ The power and discretion of a district court in an action brought pursuant to Section 5 of the Voting Rights Act is quite limited. *McCain v. Lybrand*, 465 U.S. 236, 104 S.Ct. 1037, 79 L.Ed.2d 271 (1984); *Canady v. Lumberton City Board of Education*, 454 U.S. 957, 102 S.Ct. 494, 70 L.Ed.2d 373 (1981); *Perkins v. Matthews*, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971); *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). In fact, the Supreme Court has stated that the only questions before the Court are: "(1) whether a change is covered by Section 5; (2) if the change is covered, whether Section 5's approval requirements have been satisfied; and (3) if the requirements have not been satisfied, what relief is appropriate." *McCain v. Lybrand*, 465 U.S. at 250, n. 17, 104 S.Ct. at 1046, n. 17. In this case there is no dispute that the changes at issue are covered by Section 5 and that approval has not been obtained. Thus, the only proper question which this court may address is that of the appropriate relief. For the reasons that follow, we agree with the government that the seats of all five members of the Board of Commissioners of Onslow County must be declared vacant and a new election held in 1988.

1. All elections held under all of the changes implemented since 1 November 1964 have been conducted in violation of federal law because, at the time they were held, unprecleared voting changes were utilized. *See Connor v. Waller*, 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975). This is true for the 1986 election at which the three members who defendants seek to continue in office were elected.

2. Approval by the Attorney General on 6 July 1987 of the at-large method of nomination and four-year terms of office did *not* have the effect of validating previously held elections. Since Section 5 requires preclearance of voting rights changes, it is axiomatic that a decision approving such changes has only future application.

3. An election in 1988 for fewer than all five members of the Board would be an election pursuant to the "staggered terms" provision to which the Attorney General has objected. The very nature of the objection by the Attorney General was that staggered term elections deprived black voters of their best opportunity to elect a commissioner of their choice by the use of single-shot voting. If this court were to allow an election this year for only two members, that evil would not be corrected. It is the *system* of electing commissioners to staggered terms, not the individual offices, that is being challenged.

4. To allow continued implementation of the staggered terms provision would reward inaction on the part of those charged with the duty of seeking preclearance. Section 5 of the Voting Rights Act has now been in effect some twenty-three years. Even though the obligation is placed on the covered jurisdictions to seek preclearance voluntarily before implementing voting changes, most of the impetus for seeking preclearance has come from the Department of Justice or interested individuals and groups of voters. It is likely that many officials in the covered jurisdictions simply were not aware of their obligations. It is also undisputed that many of the "changes" requiring preclearance were only defined by court decisions. Nevertheless, if the desired goals of the legislation are to be obtained, there can be no rewards for delay.

5. The black voters of Onslow County should not be required to wait any longer to exercise their voting rights under a plan which has been approved as provided by the Voting Rights Act of 1965.

Defendants' argument that they are powerless to remedy the violation is completely without merit. This court certainly has the power to order an election in conformity with constitutional and legislative princi-

**1024**

ples. In addition, as contended by plaintiff, it does not appear that North Carolina law is a barrier. North Carolina General Statute § 163–22.2 (1987) provides:

> In the event ... any State election law or form of election of any county board of commissioners ... is unenforceable because of objection interposed by the United States Justice Department under the Voting Rights Act of 1965 and such ruling adversely affects the conduct and holding of any pending primary or election, the State Board of Elections shall have authority to make reasonable interim rules and regulations with respect to the pending primary or election as it deems advisable so long as they do not conflict with any provisions of Chapter 163 of the General Statutes....

The court hereby declares that the staggered term procedure for the election of county commissioners of Onslow County, North Carolina, as provided by Chapters 151 and 167 of the 1969 Session Laws of North Carolina, constitutes a voting change within the meaning of Section 5 of the Voting Rights Act of 1965 to which the Attorney General has interposed a timely objection rendering said procedure legally unenforceable. Accordingly, defendants, their agents, successors in office, and all persons acting in concert with any of them are hereby restrained and enjoined from further implementing the staggered term procedure.

The terms of office of all five members of the Board of County Commissioners of Onslow County, North Carolina, shall terminate on the same date that the offices of those members of said Board elected in 1984 terminate. Defendants are hereby ORDERED to develop and present for Section 5 preclearance a plan for conducting an election in 1988 for the Board of Commissioners of Onslow County, North Carolina, under an election system that removes the objectionable staggered term procedure in compliance with the Voting Rights Act.