Rafel LOPEZ, Jr., Plaintiff,

v.

HALE COUNTY, TEXAS, Bill Hollars, County Judge, Nina Jo Morris, Homer Roberson, Henry Rieff, and James Belk, all in their official capacity as County Commissioners of Hale County, Texas, Defendants.

Civ. A. No. 5:92–CV–0078–C.

United States District Court, N.D. Texas, Lubbock Division.

Sept. 1, 1992.

Rolando Leo Rios, San Antonio, Tex., William Lea Garrett of Garrett & Thompson, Dallas, Tex., for plaintiff.

Robert T. Bass of Allison & Associates, Austin, Tex., for defendants.

Before SMITH, Circuit Judge, WOODWARD and CUMMINGS, District Judges.

## MEMORANDUM OPINION

JERRY E. SMITH, Circuit Judge:

In his complaint brought pursuant to section 5 of the Voting Rights Act of 1965 (the "Act"), 42 U.S.C. § 1973c, the plaintiff, an Hispanic registered voter of Hale County, Texas, seeks an order prohibiting the county and its Commissioners Court[1] from further implementation of voting changes effected without preclearance as required by the Act. In accordance with 28 U.S.C. § 2284, the present district court of three judges has been convened to consider whether the plaintiff is entitled to relief.

### I.

The facts are undisputed. In 1991, following the decennial census, the Commissioners Court redrew the boundary lines for the four commissioners precincts. Because of various legal questions regarding whether the census figures would be adjusted, the reapportionment process was delayed. On September 11, 1991, the Commissioners Court approved a final plan of reapportionment and, on October 23, 1991, submitted the plan to the Attorney General of the United States for preclearance.

Despite the county's request for expedited consideration, the Attorney General is-

---

**1.** As in all Texas counties, the Commissioners Court is the governing body, performing both legislative and administrative functions. It con-
sists of the county judge and four county commissioners. For convenience, we refer to the defendants collectively as the "county."

sued no definitive response until April 10, 1992, at which time he indicated his unwillingness to preclear the plan. By that time, the new reapportionment plan already had been implemented. For example, the candidate filing period had begun in December 1991, as required by state law, and voter registration certificates had been issued. The filing deadline, under state law, had occurred on January 2, 1992, for the primary elections to take place in the spring.

Most importantly, the general primary elections already had been held, as provided by the state election code, on March 10, 1992—but only for two of the four commissioners precincts, precincts 1 and 3.[2] The parties are in agreement that the focus of the plaintiff's complaint regarding the new reapportionment plan is precinct 2, as to which, along with precinct 4, elections are not scheduled until 1994.

A month after the primary—on April 10, 1992—the Attorney General interposed an objection, noting that under the plan that had been implemented, "Hispanics would not constitute a majority of the registered voters in either [precinct 1 or precinct 2] in the new plan" and that the problem could be remedied by "minimizing the proposed plan's fragmentation of the Hispanic population ... between [precincts] 1 and 2."

## II.

The plaintiff did not file his complaint in this matter until April 23, 1992—approximately two weeks after the Attorney General had objected and six weeks after the primary elections had occurred. The complaint avers that, as the election was conducted without preclearance, it is a nullity. The plaintiff prays that this court declare the voting change unenforceable and fashion an appropriate remedy.

After the county had answered,[3] the plaintiff moved for summary judgment, requesting that the November 3, 1992, general election be enjoined until the county adopts a reapportionment plan that complies with section 5 and that the March 10 primary elections be declared void. The county responded, asking instead that the primary election results remain in place, that the general election proceed as scheduled, and that this court "[d]etermine the necessity for any modification of lines used for the primary elections of 1992 within the context of 1994 elections only, thereby preventing wholesale confusion and chaos among voters during 1992 elections." Importantly, the county also pled laches, contending that the plaintiff is barred from obtaining any equitable relief because he waited until after the primary election had occurred before filing the present action.

## III.

The parties have entered the following stipulations:

1. That the Plaintiff, Rafel Lopez, is a Mexican American resident of Hale County, Texas. He has standing to bring this lawsuit.

2. That Hale County, Texas is a jurisdiction covered by Section 5 of the Voting Rights Act, 42 U.S.C. Sec. 1973(c) [sic], and, therefore, cannot enforce voting changes unless they have been precleared by the United States Attorney

---

**2.** The results of the March 10, 1992, general primary in precincts 1 and 3 were such that no runoff elections were necessary.

**3.** In its answer, the county argues that what it calls a "safe minority precinct" is impractical in Hale County:

Although Defendants admit that the minority population of Hale County is significant, Defendants aver that this minority population is not so geographically compact as to allow for statistically proportionate minority representation upon the Commissioners Court, or the creation of more statistically substantial minority precincts without the necessity of a bizarre precinct configuration which would

not be conducive to prudent administration of elections, would deny efficient budget administration duties imposed upon Commissioners, would significantly interfere with or effectively eliminate traditional functions of the Commissioners Court regarding rural road maintenance, and would be injurious to the public interest by the creation of geographically disparate communities sharing little similar interest, leadership or contiguity. Reasonable alternative plans would not significantly increase the potential for minorities to elect a candidate of choice despite the imposition [of] all the stated negative aspects of such a narrow based [sic] plan.

General or the United States District Court for the District of Columbia.

3. That the Hale County, Texas reapportionment plan adopted by the Commissioners Court of Hale County, Texas on September 11, 1991, is a voting change requiring preclearance pursuant to the Voting Rights Act.

4. That the Department of Justice interposed an objection to the Hale County, Texas reapportionment plan on April 10, 1992.

5. That the March 10, 1992 primary election for Hale County, Texas, was an election conducted pursuant to an unprecleared election change.

6. Filed in the papers of this cause as "Agreed Interim Plan" is a new reapportionment plan that has been agreed to by the parties. The Agreement calls for the submission of the new reapportionment Plan to the United States Department of Justice for preclearance in accordance with federal law.

7. That the 1992 elections should not be set aside at this time.

These stipulations were entered prior to oral argument in this matter.

The plaintiff continues to assert that he is entitled to summary judgment. He views, as appropriate relief, either the voiding of the March 10 primary and the holding of a new primary using acceptable boundaries, or an order implementing such new boundaries for the November general election but using the results from the primary that has been held.

The county continues to argue that the plaintiff is entitled to no relief and that laches bars his entitlement to an injunction. The county points out that it would be unduly disruptive to conduct a new primary and that, in any event, the district at issue—precinct 2—is not scheduled on the ballot until 1994. The county also contends that it would be unfair to implement boundaries in the general election that are different from those utilized in the primary.

As shown by the above-quoted stipulation, the parties, while adhering to their respective legal positions, have presented to us an agreed apportionment scheme.

Essentially, that plan differs from the one used in the primary in that the stipulated plan has a higher percentage of hispanic voters in precinct 2, thus presumably increasing the chance that, in 1994, hispanic voters would have a greater assurance of being able to elect at least one commissioner of their choice. The parties now suggest, as an alternative, that this court direct that the stipulated plan be submitted to the Attorney General for preclearance and that, if that scheme is precleared, either (i) it be used to conduct a new primary or (ii) it be implemented for the November 1992 general election (at which the winners of the March 10 primary would appear on the ballot). If the proposed plan is not precleared, the parties propose that this court order it into effect for 1992 only, as an interim plan (either with or without the holding of a new primary).

## IV.

In the matter before the instant three-judge panel, the plaintiff requests relief only under section 5; no section 2 or other relief is asked for. Moreover, the jurisdiction of a section 5 court is limited to consideration of the following issues: "(i) whether a change was covered by § 5, (ii) if the change was covered, whether § 5's approval requirements were satisfied, and (iii) if the requirements were not satisfied, what remedy was appropriate." *City of Lockhart v. United States*, 460 U.S. 125, 129 n. 3, 103 S.Ct. 998, 1001 n. 3, 74 L.Ed.2d 863 (1983).

The parties are in agreement that the changes implemented for the March 1992 primary are covered by the Act and that preclearance was not obtained, as required by section 5, from either the Attorney General or the United States District Court for the District of Columbia. The only question remaining for us to resolve, therefore, is that of remedy.

For several reasons, we conclude that the plaintiff has not shown himself entitled to any relief. Any order that would satisfy the plaintiff would be equitable in nature, so we look to principles of fairness and equity in determining whether to interject

this court into the state's election procedures.

■ The statute provides a mechanism for an appropriate party, such as the instant plaintiff, to obtain an order enjoining further use of an uncleared plan. Relief is not automatic, however. The federal courts do not *sua sponte* enter injunctions proscribing election changes; instead, a party must file suit and demonstrate entitlement to favorable judicial intervention.

■ Laches logically, and fairly, plays a part in our decision as to whether this plaintiff has shown such an entitlement. We conclude that he has not. He has advanced no reason why he could not have filed suit before the primary had occurred. The Supreme Court has indicated that this is an important factor. In *Clark v. Roemer,* — U.S. ——, ——, 111 S.Ct. 2096, 2101, 114 L.Ed.2d 691 (1991), it observed that the "[a]ppellants displayed no lack of diligence in challenging elections for the uncleared seats." *Accord South Carolina v. United States,* 585 F.Supp. 418, 423 (D.D.C.) (three-judge court) (per curiam) (dilatory motions may preclude entitlement to injunctive relief when they are filed on the eve of primaries), *cert. dismissed,* 469 U.S. 875, 105 S.Ct. 285, 83 L.Ed.2d 164 (1984).

Here, the primary, once conducted on March 10, created expectation interests that cannot lightly be discounted. The overriding purpose of the Act is to facilitate citizens' right to participate in the electoral process. While the Act permits that process to be interrupted where requirements such as preclearance have not been met, we do not enthusiastically consider setting aside an election that has occurred, where the plaintiff easily could have sought, and presumably would have obtained, an injunction prior to that election. In fact, courts in this circuit have held that ordering new elections in the absence of

preclearance is a "drastic remedy" that should be imposed only when essential to enforce basic voting rights. *See United States v. Louisville Mun. Separate School Dist.,* 557 F.Supp. 1168, 1172 (N.D.Miss. 1983) (three-judge court) (per curiam) (citation omitted). *Accord Cook v. Luckett,* 735 F.2d 912, 922 (5th Cir.1984) (elections not to be set aside absent "serious voting violations or aggravating factors" (quoting *Saxon v. Fielding,* 614 F.2d 78, 79 (5th Cir.1980))).[4]

Accordingly, this plaintiff is guilty of laches, and we give that factor substantial weight in our equitable balancing. But laches is not the only factor that weighs against granting relief. The fact is that ordering new boundaries for the 1992 general election—with or without a new primary—will do nothing to advance the interests of this plaintiff as a minority litigant, as no elections are scheduled in precinct 2 for 1992. Any order from this court regarding the 1992 elections would affect only precincts 1 and 3. There is little, if any, reason to disrupt the orderly election processes for those election districts when the focus of any Act-related concerns is elsewhere.

The county has indicated its willingness to adopt changes in the boundaries to precinct 2 that will increase the percentage of hispanic voters in that district. Any such changes, of course, would and could affect only the next scheduled election for commissioner in that precinct, which is in 1994. Under state law, such changes would not need to be in place until the fall of 1993, in time for mailing of voter registration certificates and for effecting the candidate filing process in advance of the filing deadline and the 1994 primary election.

If the county fails to make changes that are acceptable to this or any other potential plaintiff, or if such changes are made but

---

**4.** The plaintiff cites a number of cases in which courts have voided elections that already have occurred. In those cases, however, the section 5 suit was filed *before* the election, not, as here, approximately 1½ months later. E.g., *NAACP v. Hampton County Election Comm'n,* 470 U.S. 166, 105 S.Ct. 1128, 84 L.Ed.2d 124 (1985);

*Clark v. Roemer,* — U.S. ——, 111 S.Ct. 376, 112 L.Ed.2d 390 (1990) (per curiam); *Smith v. Clinton,* 687 F.Supp. 1310 (E.D.Ark.) (three-judge court) (suit filed several weeks before primary), *aff'd mem.,* 488 U.S. 988, 109 S.Ct. 548, 102 L.Ed.2d 576 (1988).

not precleared, there will be ample opportunity for such a person to obtain section 5 equitable relief. No particular interest is served by entering an injunction now.[5]

In fact, the public interest would be disserved. An election has been held; voters have cast their ballots; candidates have been nominated; the county has expended considerable money and effort in that process. It would be particularly onerous to void that process and start over, unless overriding equitable considerations required it.

It would be equally unfair to require the candidates nominated according to the boundaries used in the primary to run in new districts in the general election. The parties have indicated that the boundaries under their newly-presented stipulated plan are significantly different from those used in the primary. Such chaos benefits no one and, most importantly, hardly advances the interest of representative democracy.

The Supreme Court has recognized that we may consider such broad equitable considerations as "whether new elections are so imminent that special relief is inappropriate;" *Hathorn v. Lovorn,* 457 U.S. 255, 270, 102 S.Ct. 2421, 2430, 72 L.Ed.2d 824 (1982), and that in fashioning equitable relief we are "faced with the problem of 'reconciling the requirements of the Constitution with the goals of state political policy,'" *Upham v. Seamon,* 456 U.S. 37, 44, 102 S.Ct. 1518, 1522, 71 L.Ed.2d 725 (1982) (per curiam) (quoting *Connor v. Finch,* 431 U.S. 407, 414, 97 S.Ct. 1828, 1833, 52 L.Ed.2d 465 (1977)). The Court also has left open the possibility that a section 5 district court may allow an election to go forward under circumstances even less compelling than the instant one:

We need not decide today whether there are cases in which a District Court may deny a § 5 plaintiff's motion for injunction and allow an election for an unprecleared seat to go forward. An extreme circumstance might be present if a seat's unprecleared status is not drawn to the attention of the State until the eve of the election and there are equitable principles that justify allowing the election to proceed.

*Clark v. Roemer,* —— U.S. at ——, 111 S.Ct. at 2102. Here, the plaintiff brought the unprecleared status to the local jurisdiction's attention well *after* the election, and, unlike the situation in *Clark,* suit was not filed before the election. Under such circumstances, "the district court should adopt a remedy that in all the circumstances of the case implements the mandate of § 5 in the most equitable and practicable manner and with least offense to its provisions." *Id.* —— U.S. at ——, 111 S.Ct. at 2105.

In summary, we conclude that there is no need for this court to alter the legal relationship of the parties. The plaintiff, by failing to act timely, has suffered an election to take place and expectations and interests to be created. There is ample opportunity for the county to make further changes and to have those changes precleared for the 1994 elections.[6] If that occurs—and we have every reason to believe it will—the Supreme Court's directive in *Clark* that we "adopt a remedy that in all the circumstances of the case implements the mandate of § 5 in the most equitable and practicable manner," *id.,* will have been heeded.

Thus, there are no equitable reasons for this court to take action now that would be only counterproductive. Absent any action

---

**5.** In *Brooks v. State Board of Elections,* 775 F.Supp. 1470, 1481 (S.D.Ga.1989) (three-judge court) (per curiam), *aff'd mem.,* —— U.S. ——, 111 S.Ct. 288, 112 L.Ed.2d 243 (1990), the court noted that it could not "'equitably preclear' any of the changes based on equity's rule of laches." Our decision today does not constitute "equitable preclearance," as we hold only that equitable relief is not called for at this time. Thus, while laches is a factor in our decision, a finding of laches is not tantamount to preclear-

ance under the facts and current posture of this case.

**6.** As a § 5 court, we express absolutely no view as to whether the boundaries used in the March 10, 1992, primary are in violation of the Act or of the Constitution. *See City of Lockhart,* 460 U.S. at 129 n. 3, 103 S.Ct. at 1001 n. 3 (1983); *Perkins v. Matthews,* 400 U.S. 379, 385, 91 S.Ct. 431, 435, 27 L.Ed.2d 476 (1971).

by this court, the November 3, 1992, general election in Hale County presumably will proceed as scheduled, using the county commissioner precinct districts that were in effect for the March 10, 1992, primary, and also using the results of that primary.[7]

The plaintiff's motion for summary judgment is DENIED. The request for injunctive relief is DENIED. The complaint is DISMISSED, the dismissal being with prejudice in so far as it regards the 1992 primary and general elections.

---

7. There is no doubt that we have the authority, in the face of an unprecleared plan, to allow the election to proceed: "[E]lections may be held under exigent circumstances under a plan to which the Attorney General has objected." *Campos v. City of Houston,* 968 F.2d 446, 452 (5th Cir.1992) (per curiam) (revised opinion) (citing *Clark,* —— U.S. at ——, 111 S.Ct. at 2102).